**LOEW'S DRIVE-IN THEATRES, Inc. v. PARK-IN THEATRES, Inc.**

No. 4316.

United States Court of Appeals
First Circuit.

April 8, 1949.

Hector M. Holmes, of Boston, Mass. (John L. Curran and Herbert B. Barlow, both of Providence, R. I., and Fish, Richardson & Neave, of Boston, Mass., on the brief), for appellant.

Leonard L. Kalish, of Philadelphia, Pa. (Melvin R. Jenney, of Boston, Mass., Thomas J. Flynn, of Providence, R. I., and Kenway, Jenney, Witter & Hildreth, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and PETERS, District Judge.

WOODBURY, Circuit Judge.

The defendant in an action for unpaid royalties alleged to have fallen due under a licensing agreement prior to its admittedly legal termination by the plaintiff on June 1, 1938, and for damages for patent infringement thereafter, has taken this appeal from an interlocutory judgment entered for the plaintiff on the issue of liability.

The plaintiff-appellee, a New Jersey corporation, is the owner by assignment of United States patent No. 1,909,537 for a Drive-in-Theatre issued on May 16, 1933, to one Hollingshead. On June 1, 1937, it licensed the defendant-appellant, a Rhode Island corporation, to operate a drive-in theatre in Providence under the Hollingshead patent and the latter commenced operations under its license on July 21, 1937. The defendant paid a percentage of its gross receipts to the plaintiff as royalties in accordance with the terms of the license agreement until the close of its 1937 season in November of that year. It opened its theatre again in the spring of 1938 but it made no further reports of its business and paid no further royalties to the plaintiff on the advice of its counsel that the license was illegal and the Hollingshead patent was invalid for absence of patentable invention. Thereupon on June 1, 1938, the plaintiff cancelled the license for failure to pay royalties and subsequently filed its complaint in the instant action in which two causes of action are set out; one for unpaid royalties alleged to have become due under the license up to the date of its termination, and the other for infringement of the Hollingshead patent after the termination of the license.

In the court below the defendant-appellant interposed a variety of defenses. In the view we take of the case it will serve no useful purpose to enumerate them. It will suffice to say that after hearing the court below found them without merit, and holding all of the claims of the patent which had been put in issue, that is, claims 2, 4, 5, 6, 8, 10, 15, 16, and 19, valid and infringed by the defendant after the termination of its license, (indeed the defendant admits that it infringed "at least some of the Hollingshead claims in issue if those claims are valid") it enjoined the defendant from further infringement and ordered the parties to proceed to trial of the issue of damages in both causes of action in accordance with their pre-trial agreement to defer that issue until after the issue of liability should be determined in the plaintiff's favor.

Federal jurisdiction over the cause of action for patent infringement on the ground that it is one arising under an act of Congress relating to patents is obvious. 28 U.S.C.A. § 1338(a). But federal jurisdiction over the cause of action for unpaid royalties cannot rest upon the same ground for "It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent, is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such." Luckett v. Delpark, Inc., 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 and cases cited. And, although under Rule 18(a) Federal Rules of Civil Procedure, 28 U.S.C.A.,

the claim for unpaid royalties can with propriety be joined with the claim for patent infringement, such joinder does not enlarge or extend the jurisdictional limits fixed by Congress in the above section of the Code. The rule permitting joinder of causes of action "must, of course yield to the jurisdictional statute." Geneva Furniture Mfg. Co. v. Karpen, 238 U.S. 254, 259, 35 S.Ct. 788, 790, 59 L.Ed. 1295. The rule of general application controlling in patent cases "does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action."* Hurn v. Oursler, 289 U.S. 238, 245, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148. Thus if federal jurisdiction over the cause of action for unpaid royalties exists, it must rest upon the diversity of the citizenship of the parties and the amount in controversy between them.

The diversity of the citizenship of the parties to the instant case is clearly established by the pleadings and the findings of the court below. The amount of the unpaid royalties in controversy, however, is not, unfortunately, established with the same clarity.

In paragraph 3 of the plaintiff's complaint it is alleged generally that the jurisdiction of the court below "arises because the suit is one under the patent laws of the United States, and also because of diversity of citizenship of the parties, and the amount of the controversy, exclusive of costs and interest, is in excess of Three Thousand Dollars." The defendant originally denied this allegation in its answer. But at the pre-trial conference it withdrew its denial thereby permitting the allegation to stand as admitted, and the court below included in its opinion a finding in almost verbatim accordance with the allegation. Furthermore the court below stated as a conclusion of law that it had "jurisdiction over the claim for royalties, under the license agreement, because of the diversity of citizenship of the parties and because the complaint alleged that the amount in controversy, exclusive of interests (sic) and costs, is in excess of $3,000.-00." [1]

These allegations, findings and conclusions are not as sharp and clear-cut as they might be. They might be taken to establish only that the plaintiff had suffered damages under both causes of action amounting in the aggregate to more than the statutory minimum for federal jurisdiction. But we do not need to consider whether or not the damages in the federal and the non-federal causes of action may be aggregated to provide the requisite jurisdictional amount, for they can also be read to mean that the plaintiff's damages under the count for unpaid royalties alone amounted to over $3,000. And this is enough to confer jurisdiction, for to justify dismissal "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount," or that the plaintiff "never was entitled to recover" the amount claimed "and that his claim was therefore colorable for the purpose of conferring jurisdiction," or that the plaintiff and defendant "have colluded to confer jurisdiction by the method of the one claiming a fictitious amount and the other failing to deny the veracity of the averment of amount in controversy." St. Paul Mercury Indemnity Co. v. Red Cab

---

[1] The court below also concluded, for the reasons already expressed we think erroneously, that it also had "jurisdiction over the claim for royalties, under the license agreement, because the court, having jurisdiction over the patent-infringement, retains such jurisdiction over the claim for royalties under the contract, irrespective of the amount of recovery under the contract."

Co., 303 U.S. 283, 289, 290, 58 S.Ct. 586, 590, 82 L.Ed. 845. Therefore, since on the record we cannot say "to a legal certainty" that the plaintiff's claim for unpaid royalties could not exceed the jurisdictional minimum, it follows that federal jurisdiction over the cause of action for those royalties on the ground of diversity of citizenship and amount in controversy must be taken as established.

Our jurisdiction over this cause of action on appeal, however, is another matter. For although injunctive relief is granted in the judgment appealed from and we have appellate jurisdiction over such judgments under 28 U.S.C.A. § 1292 (1) even though interlocutory, we have jurisdiction to review only that part of such judgments as have to do with the injunctive relief afforded and no other, Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82, 86, 139 A.L.R. 1 and cases cited, and the injunction issued in the case at bar only has to do with the cause of action for patent infringement. In so far as the non-federal cause of action for unpaid royalties is concerned the judgment only determines the issue of liability, leaving the issue of damages for later determination, and thus it is clearly not a final one. Hence it is not appealable as such.

Possibly it might reasonably be argued, however, although we have been unable to find any authorities in point, that our obvious appellate jurisdiction under the specific provisions of 28 U.S.C.A. § 1292 (1, 4) over the cause of action for patent infringement carries with it jurisdiction over the non-federal cause of action on the ground that it is one joined with and ancillary thereto. But this argument has not been made, indeed we have not had the assistance of argument on any of the jurisdictional questions here presented, and we see no occasion to ask for reargument as

to those matters, because the conclusion we have reached on the appeal of the federal cause of action, over which we clearly have appellate jurisdiction, that the patent claims in suit are invalid for lack of invention, in all probability renders the question of our jurisdiction on appeal over the cause of action for unpaid royalties of no practical moment to either of the parties in view of the plaintiff's waiver of its contention that the defendant is estopped by its license agreement from contesting validity.[2] Under the peculiar circumstances of this particular case we think the best course for us to follow is to decline decision of the question of our appellate jurisdiction over the non-federal cause of action, leaving that cause of action standing in the court below, which as we have shown has jurisdiction over it, for such further proceedings as the parties may think it is expedient for them to initiate in view of our opinion herein.

We therefore turn to the merits, and on the merits we need only to consider the issue of the validity of the patent claims in suit for our conclusion that the court below clearly erred in holding them valid renders consideration of any of the other matters asserted in defense wholly unnecessary.

Basically the patent discloses a scheme for parking automobiles in an open lot in such a way that persons sitting therein, either on the front or back seat, can see a screen or stage without obstruction from automobiles parked nearer the screen or stage or from automobiles moving in or out of the lot. Hollingshead says in the specification of his patent (omitting references to his drawings which we see no need to reproduce as part of this opinion) that to accomplish this "The surface of the field in front of the screen is graded with a slight generally down grade toward the screen, and alternate arcuate stall-ways

---

[2] At the conclusion of the trial counsel for the plaintiff stated: "We have gone to a great deal of trouble and expense to try this case and to get an adjudication on the merits of the validity of this patent, and if there is any possibility of Your Honor deciding the case on the estoppel questions alone and not pass on the merits of the patent, we would much rather withdraw our contention on estoppel. It is of far greater importance to us to have an adjudication on the validity of the merits of the patent than to rely on that estoppel paragraph." And the court below found: "Plaintiff has waived any estoppel of defendant under the license-contract."

and drive-ways are arranged generally about the screen as the center of the arcs. The stall-ways are each inclined upwardly at a slight angle while the drive-ways may be generally horizontal, and the rear boundaries of the drive-ways are at a level below the front boundaries of the next succeeding stall-way." This slight upward inclination of the stall-ways, he says, is "so that the automobile will be tilted upwardly to an extent sufficient to bring the angle of vision between the car and the screen, clear of the top of the car ahead of it;—each stall-way, however, being slightly below the stall-way behind it, so that the angle of vision from each car to the screen will clear not only the car directly ahead of it, but all cars ahead of it." And he provides means for the occupants of cars in the more remote stall-ways to see the screen without craning their necks to look down upon it by giving the more remote stall-ways successively lesser angles of upward inclination.

Then he discloses additional means for adjusting individual cars with respect to vertical angles of vision therefrom in order to accommodate cars of various types, sizes and proportions, and occupants of various stature, by providing "wheel lifts" or "risers" (typically short ramps) "at the front end of each stall-way or space, on to which the front wheels of the automobile are adapted to be driven to a varying extent, in order not only to more sharply incline the front of the car upwardly, but so as also to permit each car to be inclined to a greater or lesser degree, at the will of the driver or occupant." This provision, he explains, "enables the occupants of each car to adjust the inclination of their car to the particular relative height of seats to windshield, or to the particular height of the occupant in relation to the seats and windshield of the car. Thus, while some automobiles have relatively high seats and large windshields, other automobiles have relatively low seats and windshields of relatively small vertical dimensions placed at various heights. By this means, the angle of vision may be adjusted individually and selectively for each individual occupant without interference with any other automobile."

The foregoing, we think, gives a general idea of the salient points of Hollingshead's scheme in the terraced embodiment which he said he preferred, but to which he did not restrict himself.[3]

For present purposes we concede, although the matter may not be altogether free from doubt, that Hollingshead's disclosure is definite enough to inform anyone skilled in the appertinent art, or for that matter anyone with average common sense and ingenuity, of means for arranging automobiles in a parking lot in such a way that the occupants thereof might view a moving picture screen in comfort without leaving their seats. That is, for present purposes we concede that Hollingshead's patent contains an adequate "teaching" of his open-air drive-in theatre structure, and this in spite of the fact that he gives no mathematical formula for pre-determining the vertical angle of his automobile stall-ways relative to the height of the screen; typical claims providing only that the stalls be "at a vertical angle with respect to the stage such as will produce a clear angle of vision from the seat of the automobile, through the windshield thereof to the stage, free of obstruction from the automobiles ahead of it." Furthermore we concede that a drive-in theatre structure may be the subject matter of a patent. Park-In Theatres v. Rogers, 9 Cir., 130 F.2d 745.

The basic question in this case as we see it is whether, given the idea or conception of an open-air drive-in theatre, an exercise of the inventive faculty was required to devise the means for carrying it out. For it is elementary that however new and useful, or even revolutionary and beneficial to humanity, an idea may be, it is not of itself patentable. The principle was succinctly stated years ago by the Supreme Court in Rubber-Tip Pencil Company v. Howard, 20 Wall. 498, 507, 22 L.Ed.

3 Perhaps the Hollingshead patent is to be read as disclosing means for adjusting the vertical angles of vision through the windshield of cars parked on flat lots, or even on lots graded with a slight general-ly up grade toward the screen. But we do not consider this question for it is clear that the defendant's lot was in fact graded downward toward the screen, or terraced, as Hollingshead clearly taught.

552

410, wherein it is said: "An idea of itself is not patentable, but a new device by which it may be made practically useful is," and a few years later it was reaffirmed in Miller v. Eagle Manufacturing Co., 151 U.S. 186, 201, 14 S.Ct. 310, 316, 38 L.Ed. 121, by the statement: "It is not the result, effect, or purpose to be accomplished which constitutes invention, or entitles a party to a patent, but the mechanical means or instrumentalities by which the object sought is to be attained." See also Knapp v. Morss, 150 U.S. 221, 227, 228, 14 S.Ct. 81, 37 L.Ed. 1059; Walker on Patents (Deller's Ed.) § 21. Thus a system for the transaction of business, such, for example, as the cafeteria system for transacting the restaurant business, or similarly the open-air drive-in system for conducting the motion picture theatre business, however novel, useful, or commercially successful is not patentable apart from the means for making the system practically useful, or carrying it out. Cf. In re Patton, 127 F. 2d 324, 29 C.C.P.A., Patents, 982; Hotel Security Checking Co. v. Lorraine Co., 2 Cir., 160 F. 467, 24 L.R.A.,N.S., 665.

Application of this principle renders beside the point the District Court's finding, based upon evidence given by motion picture exhibitors testifying as experts "that the drive-in theatre is 'ingenious,' 'practical,' 'a good business investment,' 'a completely new idea of giving entertainment to people who could not ordinarily go to the theatre,' and 'is a beneficial contribution to the art of exhibition of motion pictures.'" And similarly it renders beside the point the further finding, based upon the defendant's advertising, that its theatre met with "'immediate and enthusiastic approval from the public.'" For we are not here called upon to deal with the novelty, usefulness or commercial success of the outdoor drive-in theatre as an idea, or as a system for transacting business, but with "the mechanical means or instrumentalities," Miller v. Eagle Manufacturing Co., supra, "by which it [the idea or system] may be made practically useful," Rubber-Tip Pencil Company v. Howard, supra, to which means we now turn our attention.

The means disclosed by the patent are for "aiming" or pointing automobiles parked in a lot at a screen or stage in such a way that persons sitting therein may look through the windshield at a moving picture or theatrical performance in comfort and without obstruction to their vision by the tops of cars in front. The means for pointing the automobiles in the horizontal plane are the stalls, or parking spaces, arranged side by side in successive rows each row in a concentric arc about the screen as the center of the arc into which automobiles may be driven from the driveways behind each row of stalls. This arcuate arrangement of parking stalls in a lot is obviously only an adaptation to automobiles of the conventional arrangement of seats in a theatre employed since ancient times to enable patrons to see the performance while looking comfortably ahead in normal sitting position without twisting the body or turning the head. To be sure the limitations on the fields of vision of occupants of an automobile imposed by the necessity of looking through the limited area of a windshield at a screen or stage require that automobiles in a parking lot be pointed more accurately at the screen or stage than seats in a theatre. But nevertheless there is nothing inventive in adapting the old arcuate arrangement of seats in a theatre to automobiles in a parking lot as the means to achieve horizontal pointing. Indeed the plaintiff does not seriously contend that there is.

Its contention is that the faculty of invention was called for to devise means for aiming cars vertically, or tilting them, to provide clear fields of vision ahead for persons sitting therein.

Certainly terracing the parking lot as the means for giving occupants of cars in the rearward rows of stalls a clear field of vision over the tops of cars in front is not inventive. It is again only an adaptation of the familiar sloping floor of the conventional theatre. Nor was the faculty of invention required to grade each row of stalls to an appropriate vertical angle, the rearward rows at successively lesser angles, to aim the cars in each row at the screen. Anyone with even ordinary per-

ception would certainly realize that the vertical angles of the automobiles would have to be adjusted with reference to the height of the screen to achieve clear vision of the screen, and that on a terraced lot the rearward rows of stalls would have to be at successively lesser angles of upward inclination or else the occupants of cars in those rows would not only look over the tops of the cars ahead, but also, unless they craned their necks, look over the screen entirely. And grading the stalls longitudinally as the means for tilting cars in them vertically surely does not call for inventive ingenuity. Making every allowance for viewing the patentee's contribution in the light of hindsight, it seems to us that grading the ground upon which an automobile is to be placed for the purpose of giving it the tilt desired would be the first expedient to occur to anyone who put his mind on the problem. Again the problem of accurate aiming due to the limitation imposed upon the field of vision by the windshield is present. But again, as in the matter of horizontal pointing, solution of this problem does not seem to us to call for an exercise of the inventive faculty.

The matter of the individual adjustment of cars in the stalls to accommodate variations in the design of different makes and models, and variations in the stature of persons sitting in them, by means of risers or short ramps at the front end of each stall remains for consideration.

We are not altogether certain that this individual adjustment feature is claimed in any of the claims in suit, or for that matter, in any of the other claims of the patent. Neither are we certain that the defendant employed this feature in its structure. The evidence on this point is not entirely conclusive one way or the other and the findings made by the court below do not cover it. But we can give the patentee the benefit of the doubt on both of these questions for we are convinced that this feature does not involve an exercise of the faculty of invention.

Certainly the desirability, perhaps the necessity, of providing means for the individual adjustment of cars in the stalls

is evident. And short ramps at the front of each stall upon which the front wheels of automobiles may be driven to varying degrees as desired by the driver is an obvious expedient for tilting cars to varying degrees longitudinally. Again making full allowance for the unavoidable necessity of our viewing the means in the light of hindsight, we cannot believe that it called for invention to grade the floors of the stalls at different angles to permit the tilting of cars therein at the will of the driver. This expedient, we feel convinced, would readily occur to anyone skilled in the art of construction who put his mind to the problem.

Furthermore, the art did not have to wait for years for Hollingshead to discover the means for making drive-in theatres practically useful. So far as the record discloses Hollingshead was the first to hit upon the idea of a drive-in theatre and consequently he was the first to appreciate the problems inherent in designing a practical one. And it did not take him long to solve those problems. Thus while the art may have had to wait for years for the idea or conception of a drive-in theatre, the finding of invention in devising the means for carrying out the idea cannot be buttressed by a finding that Hollingshead was the first to supply the solution for a long-standing problem.

Viewing the opinion, findings and conclusions of the court below as a whole it seems evident that that court was so impressed with the novelty, usefulness, and commercial success of out-door drive-in theatres that it failed to focus its attention sharply upon the means employed to make such theatres practically useful. In view of our own analysis of Hollingshead's means we are of the opinion that the ultimate finding of the court below that an exercise of the faculty of invention was required to devise those means was clearly erroneous. Graver Tank & Mfg. Co. v. Linde Air Products Co., 69 S.Ct. 535.

One more matter calls for mention.

Claim 8 was one of those put in issue and the court below in its opinion mentioned that claim to point out its similarity

to claims 4, 5, 6, and 10 with respect to its coverage of "a clear angle of vision from the seat of the automobile through the windshield." And later in its opinion it found generally "that the claims of the patent in suit upon which the plaintiff relies are valid." But in its conclusions of law it failed to list claim 8 in either its conclusion of validity or its conclusion of infringement, and in its interlocutory judgment claim 8 also goes without mention although the other claims in issue are enumerated therein. Since counsel have made no point of this discrepancy in their briefs or oral argument, and since the court below has made no finding that claim 8 for some reason peculiar to itself is either invalid or not infringed, we assume that its omission from the judgment appealed from was inadvertent. The matter can be cleared up upon remand.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings consistent with this opinion; the appellant recovers costs on appeal.

MAGRUDER, Chief Judge.

The complaint joined two causes of action, (1) for damages on account of breach of promise to pay royalties under the license-agreement, and (2) for damages on account of patent infringement after the license-agreement had been terminated. They are wholly distinct causes of action, dealing with separate wrongs at different periods of time. The interlocutory judgment from which this appeal was taken dealt with both causes of action. As to the first, it was adjudged and decreed that the license-agreement "is valid and enforceable," and the parties were directed to proceed with the determination of the amount of damages thereunder by the presentation of evidence on that issue to the court itself, sitting "without reference either to a master or to a jury," as provided in the pre-trial order. As to the cause of action for patent infringement, it was adjudged and decreed that the claims of the patent in suit "are good and valid at law"; that the defendant was guilty of infringing such claims; that such infringement shall be permanently enjoined; and that the parties should proceed with the determination of the amount of damages for patent infringement in accordance with the procedure set forth in the pre-trial order.

This court undoubtedly has jurisdiction of the appeal from so much of the judgment as relates to the cause of action for patent infringement. 28 U.S.C. § 227a (1946 ed), now found without substantial change in 28 U.S.C.A. § 1292(4). I entirely agree with the opinion of the court as to the invalidity of the patent. The judgment of the district court must therefore be reversed so far as it deals with the cause of action for patent infringement.

But, though the circumstances are somewhat peculiar, I do not see how we can properly avoid determining whether we have jurisdiction of the appeal from so much of the judgment as relates to the cause of action for breach of contract. As to that, the judgment below was clearly interlocutory; and it does not fall within any of the exceptional categories of interlocutory judgments made appealable by 28 U.S.C.A. § 1292. I do not think it becomes appealable merely because the cause of action for breach of contract was joined in a single complaint with a cause of action for patent infringement. As already stated, the two causes of action were separate and distinct; the one was not in any proper sense "ancillary" to the other. I would therefore dismiss the appeal so far as it seeks review of that part of the judgment dealing with the cause of action for breach of the royalty agreement.

This disposition would make it unnecessary for us on this appeal to consider whether the district court had jurisdiction of the complaint for breach of the royalty agreement. If this matter were before us, I should, as at present advised, be inclined to agree with the conclusion of Judge Woodbury that the district court had jurisdiction, but I would arrive at that conclusion by a somewhat different analysis of the statutory requirement as to jurisdictional amount.