**PARK–IN–THEATRES, Inc. v. PERKINS et al.**

No. 12627.

United States Court of Appeals, Ninth Circuit.

June 22, 1951.

Reginald E. Caughey, Lyon & Lyon, all of Los Angeles, Cal., Leonard L. Kalish, Philadelphia, Pa., for appellant.

C. A. Miketta, Los Angeles, Cal., (Johnson & Ladenberger, Robert G. Johnson, Don A. Ladenberger, all of Los Angeles, Cal., of counsel), for appellees.

Before DENMAN, Chief Judge, and ORR and HASTIE,[1] Circuit Judges.

HASTIE, Circuit Judge.

The matter in question here is the validity of a patent on a drive-in theatre. United States Letters Patent No. 1,909,537 was issued on May 16, 1933 to R. M. Hollingshead, Jr. It was subsequently assigned to plaintiff, Park-In Theatres, a New Jersey corporation which brought this suit against two individual and two corporate defendants, all citizens of California, charging infringement of certain claims of the patent and praying for damages and an injunction. On defendants' motion for summary judgment, the district court held the patent claims invalid, and entered judgment for the defendants. It also awarded them attorney's fees.

The district court held that the patent claims in suit were invalid and void for lack of invention. There were additional grounds of decision but in our view it is not necessary to consider them.[2]

Preliminarily, although there is no dispute as to the text of the Letters Patent, it has been pointed out by plaintiff, appellant on this appeal, that it does not now appear that the document itself was formally introduced into the record in the district court. Aside from the anomaly of such argument from the party suing on the patent, we note that appellant's own complaint states that the "patent is hereby proffered".[3] And in its formal objections to certain proposed findings of fact which appear in the record appellant averred "that the claims in issue are in the patent and before the court". Repeated references to particular language of the patent in the proceedings and filings in the district court lend support to the contention made at bar by the appellees that the patent in formal text was introduced into the record and examined and relied upon by the district court although, in some manner not apparent, the document subsequent-

1. Third Circuit, sitting by special designation.

2. Other, and overlapping, grounds relied upon by the district court for holding the patent claims invalid and void were: "lack of invention over the prior art"; they had been "anticipated by prior structures, patents, and publications"; they failed "to define and claim the purported invention in full, clear, concise, and exact terms"; "functional language" was used, and the claims were "indefinite".

3. A profert of letters patent has been held sufficient to permit the court to examine the patent on demurrer and to conclude that it is invalid. Heaton Peninsular Button-Fastener Co. v. Schlochtmeyer, C.C.S.D.Ohio, 1895, 69 F. 592. The general proposition that profert places the patent before the court—albeit for variant purposes—finds considerable case support. See Coca-Cola Co. v. Whistle Co. of America, D.C.D.Del.1927, 20 F.2d 261, 262, "The profert of letters patent is equivalent to annexing a copy".; Bogart v. Hinds, C.C.S.D.N.Y.1885, 25 F. 484; Dickerson v. Greene, C.C.D.R.I. 1892, 53 F. 247; Moeller v. Scranton Glass Instrument Co., 3 Cir., 1927, 19 F.2d 14, 16.

ly became separated from the record. The entire course of the proceedings in the district court is consistent only with the conclusion that the patent was before the court. Therefore, rather than to require some formal correction or supplementation of the record at this time, we treat the text of the patent as having been before the district court and consider it on this appeal as it plainly was considered below.

The patent has twenty-one claims. Plaintiff's suit alleges infringement of eight of them.[4] Quotation of three of these will supply a sufficient basis for discussion of considerations common to all of the claims in controversy.

Claim 4 reads: "4. An outdoor theater comprising a stage, alternate rows of curvilinear automobile drive-ways and curvilinear and vertically inclined automobile stall-ways arranged in front of the stage, said stall-ways being adapted to receive automobiles disposed adjacent to each other and facing the stage; — said automobile stall-ways being at a vertical angle with respect to the stage such as will produce a clear angle of vision from the seat of the automobile, through the windshield thereof to the stage, free of obstruction from the automobiles ahead of it, and an abutment along the front boundary of each of said stall-ways for limiting the forward position of the automobiles therein."

Claim 10 reads: "10. An outdoor theater comprising a stage, alternate rows of automobile driveways and automobile stall-ways arranged in front of the stage, said stall-ways being adapted to receive automobiles disposed in generally adjacent relation to each other and facing the stage, and means for longitudinally tilting the automobiles in said stall-ways in order to produce a generally clear angle of vision from the seat or the automobile through the windshield thereof to the stage, generally free of obstruction from the automobiles ahead of it."

Claim 16 reads: "16. An outdoor theater comprising exhibiting means and space for spectators in front thereof, inclined means for supporting automobiles in such space in rows further and further from said exhibiting means, the supporting means in the rows further and further away from the exhibiting means being higher and less inclined successively to an extent as will produce a clear line of vision from the seat of an automobile in a row, through a windshield thereof to the exhibiting means, free of obstruction from the automobile ahead of it, and an automobile driveway leading to and from said supporting means of a row."

There is no invention in the theatre thus described. Any satisfactory theatre must be so constructed that none of the audience will obstruct the view of any other while all observe a single small center of attention. Therefore, from the amphitheatre of antiquity to the modern movie palace, the architectural design of spectator space in large theatres has characteristically exhibited progressive variations in elevation and the inclination of planes from the horizontal.

A quarter century ago, the family automobile was rapidly passing from the category of a novelty in the law of torts to a commonplace in American family life. At the same time, the addition of sound to the commercial motion picture was making that already established divertisement an even more popular form of mass entertainment. This new combination of circumstances undoubtedly made it appear worthwhile in commercial contemplation to attempt to design theatres in which persons seated in automobiles within an out door area could view a motion picture screen. For the solution of this problem of latter day commerce, the patentee here rather promptly and cleverly adapted classical theatre design.

Curvilinear and progressively more elevated rows of stall-ways for the accommodation of automobiles in front of a stage are in conception and basic design as old and familiar as the classical amphitheatres. The inclination of individual rows from the horizontal is essentially segmentation

---

4. Claims 2, 4, 5, 6, 10, 15, 16, and 19 are allegedly infringed by defendants.

of the inclined plane which constitutes the floor of almost every large theatre. The deeply recessed drive ways which alternate with rows of stall-ways are but exaggerations of the recessed passage ways which separate the rows of seats in many theatre galleries and balconies. In brief the patent in suit utilizes and adapts long practiced basic general principles of theatre construction to a special theatre in which patrons' automobiles are substituted for fixed seats.

Such devising lies in the field of mechanics. The patent which covers it is a combination patent. It is not contended that any of the individual elements described and claimed is novel. It is only the ingenious combination and adaptation of familiar mechanical expedients and architectural conceptions which is said to give the totality of arrangement which constitutes the drive-in theatre patentable quality.[5] We think the ingenuity thus exhibited and applied falls short of invention within the requirements of present day patent law.

Language and analysis in the very recent Supreme Court Opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 1950, 340 U.S. 147, 71 S.Ct. 127, are pertinent here. That case dealt with a patent on a cashier's counter equipped with a three-sided frame, or rack, with no top or bottom, which, when pushed or pulled, would move groceries deposited within it by a customer to a checking clerk and leave them there when pushed back to repeat the operation. The Supreme Court reversed a holding that the patent was valid, reasoning: "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test. Neither court below has made any finding that old elements which made up this device perform any additional or different function in the combination than they perform out of it. * * * Two and two have been added together, and still they make only four. * * * Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." 340 U.S. at pages 152–153, 71 S.Ct. at page 130.

The applicability of this language to the problem before us is clear. Not a single element of plaintiff's claim performs a function in the drive-in theatre significantly different from the function it has always performed: not the means of aiming cars, not the inclination of the ground, not the devices for tilting the cars to various angles so as to insure visibility from back seats. The assembly of the elements of a successful drive-in theatre was not inventive. Cf. Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

While we have reached this conclusion independently, our conviction of its correct-

5. In appellant's own words its admission was "that in the action the plaintiff would rely upon invention residing in the combination and not in any particular element".

ness finds support in the fact that the Court of Appeals for the First Circuit has reached the same conclusion with reference to this very patent. Loew's Drive-in Theatres v. Park-In Theatres, 1 Cir., 1949, 174 F.2d 547, certiorari denied 1949, 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499.

This would be a sufficient disposition of the question of validity except for one additional consideration. This same patent was before this court nine years ago. Park-In Theatres v. Rogers, 9 Cir., 1942, 130 F.2d 745, 747. It is claimed by appellant that, consistent with that decision, we cannot dispose of this appeal by affirming the district court's conclusion that the patent was invalid on its face.

That case was brought by the plaintiff herein, Park-In Theatres, against a different defendant for alleged infringement of substantially the same claims of the patent now in suit. The district court had granted a motion to dismiss on the ground that a theatre was not within a patentable classification.[6] This court held that was error, and concluded "that the outdoor theater comes under a patentable classification, as a manufacture or machine". Question arises now only because of additional language used by the court. The language follows: "The lower court confines its conclusions to the proposition that the theatre was not a patentable subject and, consequently, did not consider the questions of invention, utility, etc. Upon the latter issues the patentee has the right to fortify the presumption of validity of the patent by proof of matters tending to show that the conception of the patentee involved invention and utility. The appellee suggests that if the decree of the lower court can be sustained on any ground going to the insufficiency of the complaint the judgment should be affirmed. This position cannot be sustained because neither the court below nor this court had the advantage of such additional light as is permissible in a patent case upon the questions of invention, prior-

ity, etc. For that reason we reverse the decision without doing more than to hold that the structure in question is within a patentable classification. We return the case to the district court for a trial of the case and a decision not inconsistent with the above determination of this court."

The issue of invention was not adjudicated by this court. Certainly we did not imply that the patent was valid. Rather, the view was taken that normally a patentee has the right to go forward with evidence that tends to indicate the validity of the patent, and that nothing appeared in the record before the court which would limit that right.

In the present case, matters of importance appear in the record beyond the circumstances relied upon in the earlier appeal. It appears by stipulation of record "that defendants' motion [for dismissal] be deemed a motion for summary judgment. and that it be deemed that plaintiff to [sic] had joined with defendant moved [sic] for summary judgment, on the question of invalidity". If this language is not as clear as it might have been, we think that at least the parties indicated their view that nothing beyond the record as made for hearing on motion for summary judgment was essential to decision of the basic issue of validity. In addition, on the basis of the record and representations of the parties before it, the district court made the finding: "Plaintiff admits and the Court finds that the elements described and claimed in the patent in suit No. 1,909,537, are individually old and were well known more than two years prior to the filing of the patent in suit. Plaintiff does not contend that there is invention in any single element of the claims of the patent in suit but claims invention in the combination of the elements."

Thus, the issue of invention was sharpened and narrowed. We think these considerations are significant because they

6. It had also held that the patent was invalid on its face but this seems to have been premised upon its holding that the drive-in theatre was not within a patentable classification.

serve to remove the liklihood, found to exist in the Rogers case, that additional evidence would be useful in illuminating the the question of invention.

Judicature is a practical business and the summary judgment procedure has been introduced into our practice as a practical device for the expeditious disposition of litigation where there appears to be no need for the usual type of trial. We think the district judge reasonably and correctly concluded that the posture of this case at the time of adjudication showed that there would be no point in taking testimony upon the question of invention. Indeed, neither in the district court nor here has appellant made apparent what, if anything, in addition to the present record might have been useful on the issue of invention. It is true that appellant claims generally that there are material issues of fact in dispute. But as we read the affidavits filed in connection with the motion for summary judgment, they do not disclose the occasion for proof beyond the record already made. Indeed, the affidavits reveal rather clearly that on the issue of invention, the problem here is essentially one of applying legal standards to circumstances adequately before the court.

There are cases in which factual presentation is necessary to make clear the significance of the patent either because of conflicting interpretations of its claims or because the patent, in its nature, is difficult to understand. But there are other cases where there can be little doubt what the patent claims and factual presentation is not necessary to illuminate the alleged invention. Bulldog Electric Products Co. v. Cole Electric Products Co., 2 Cir., 1945, 148 F.2d 792; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 1949, 176 F.2d 604, certiorari denied, 1949, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548. This appears on its face to be such a case. It was so treated by the parties in the district court and the appellant suggests nothing persuasive to the contrary.

Appellant also challenges so much of the decree of the district court as awards appellees attorney's fees in the sum of $3,400.

■ The principles which guide and control such an allowance are clear. The power is statutory; it was granted by Congress only five years ago, and it is phrased in terms of judicial discretion. "The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case". Act of August 1, 1946, 60 Stat. 778, 35 U.S.C.A. § 70. But in granting this power, Congress made plain its intention that such fees be allowed only in extraordinary circumstances. The Reports of House and Senate Committees recommending this enactment provided in identical terms that "It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, * * *. The provision is also made general so as to enable the court to prevent a gross injustice to an alleged infringer." 1946 U. S. Code Congressional Service 1386, 1387. Thus, the payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear. The cases support this view. Phillips Petroleum Co. v. Esso Standard Oil Co., D.C. D.Md.1950, 91 F.Supp. 215, affirmed 4 Cir., 1950, 185 F.2d 672; Associated Plastics Co. v. Gits Molding Corp., 7 Cir., 1950, 182 F.2d 1000; Union Nat. Bk. of Youngstown, Ohio v. Superior Steel Corp., D.C.W.D. Pa.1949, 9 F.R.D. 117; Hall v. Keller, D.C.W.D.La.1949, 81 F.Supp. 835, modified (on other grounds) 5 Cir., 1950, 180 F.2d 753, certiorari denied 1950, 340 U.S. 818, 71 S.Ct. 48; Lincoln Electric Co. v. Linde Air Products Co., D.C.N.D.Ohio 1947, 74 F.Supp. 293, affirmed 6 Cir., 1948, 171 F.2d 223.

In this case, the district court did not find that the suit was brought in bad faith. Indeed, two decisions, one by this court, in some measure favorable to the present

plaintiff with reference to this very patent afforded ample ground for a belief that the claim here in suit was sufficiently substantial to merit litigation. Park-In Theatres v. Rogers, supra; Park-In Theatres v. Loew's Drive-In Theatres, D.C.D.R.I.1947, 70 F.Supp. 880, reversed 1 Cir., 174 F.2d 547, after filing of present suit.

The entire basis of the award of attorney's fees appears to be a finding that "The pleadings, interrogatories, answers thereto, requests for admissions and admissions thereto, and the objections, motions for extensions of time and other papers on file herein indicate that the action was brought upon surmise and suspicion and plaintiff repeatedly delayed proceedings".

The record does not support the finding that "the action was brought on surmise and suspicion". In its complaint, appellant identified two drive-in theatres alleged to infringe its patent. One of the appellees admits ownership and operation of one of these theatres. There is no suggestion that the claims of the patent are not broad enough to cover that structure. The complaint alleges a close business relationship among the appellees.

Whether appellees operated other similar theatres was in dispute. In answer to interrogatories, appellant could not specify such additional theatres. But we think the admitted operation of one theatre covered by the claims of the patent sufficed to take the basic contention of appellant out of the area of surmise and conjecture.

The other stated basis of the award is that "plaintiff repeatedly delayed proceedings". An examination of the record suggests that this finding is predicated principally upon two occurrences. First, a request for admissions was filed by appellees January 28, 1949, calling upon appellant to admit within 12 days items stated in some 40 paragraphs. Appellant did not reply until February 23, when he filed a substantive response and, at the same time, asked that his reply be considered out of time. Affidavits stating on their face reasonable cause for the delay were filed at the same time. The court accepted the tardy submission, apparently treating the two weeks' delay as excusable in all the circumstances.

The second delay occurred with reference to certain filings of affidavits and other supporting documents permitted by the court after hearing on the motion for summary judgment. Although appellees' filings were originally to have been made by December 21, 1949, and appellant's responsive filings by January 6, 1950, it appears that appellees' documentation was not completed until January 31, 1950. Thereafter, on February 6, the court granted appellant 10 days to make responsive filings. Accordingly, appellant's documents were filed February 16, 1950.

We do not condone dilatory tactics by litigants or lawyers. But this record does not present a picture of dilatory tactics or willful effort to prevent expeditious disposition of litigation. Delays were slight, they were not numerous, and the court seems to have regarded them at the time as within reason. Some 18 months elapsed between the filing of the complaint and the entry of final judgment. Had appellant been prompt on the two occasions cited not more than a month of that time would have been saved. We do not find any serious fault in appellant's conduct. At most it can be said in criticism of appellant that it did not act with the utmost diligence.

Moreover, we can not see that the matters upon which the district court relied in granting attorney's fees injured the appellees in any consequental way. Certainly, the award was not necessary, in the words of the pertinent Congressional Committee Reports, "to prevent a gross injustice to an alleged infringer."

■ In all, we think the district court did not impose a sufficiently strict standard in finding cause adequate to justify an allowance of attorney's fees. Accordingly, the portion of the decree which makes such an allowance must be set aside.

The judgment of the district court is modified by striking from paragraph 8 thereof the words "reasonable attorney's fees in the sum of $3,400, and", and as thus modified, it is affirmed.