**KEUFFEL & ESSER CO., Plaintiff,**

v.

**MASBACK, Inc., Evans & Co. (Inc.), Material Process Co., Private Brand Rule Co. and Sears, Roebuck and Co., Defendants.**

**KEUFFEL & ESSER CO., Plaintiff,**

v.

**SEARS, ROEBUCK and CO., Defendant.**

United States District Court
S. D. New York.
March 23, 1955.

13. 122 F.Supp. 790–791.

**238**

Kenyon & Kenyon, New York City, Ralph L. Chappell, George T. Bean, New York City, John A. Reill, J. Russell Juten, Washington, D. C., of counsel, for plaintiff.

Fish, Richardson & Neave, New York City, John Vaughan Groner, Stuart A. White, New York City, of counsel, for defendants.

CONGER, District Judge.

Defendants have applied for counsel fees pursuant to 35 U.S.C. § 285. This section provides that in exceptional cases the court may award reasonable counsel fees to the prevailing party.

Plaintiff's patents Nos. 2,089,209 and 2,471,329 were adjudged invalid after trial. See opinion filed November 18, 1954, D.C., 126 F.Supp. 859.

The rule with respect to counsel fees was well expressed in Park-In-Theatres, Inc., v. Perkins, 9 Cir., 190 F.2d 137, as follows:

> "The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." at page 142.

Originally, plaintiff commenced suit in this court on October 11, 1950 against Masback, Inc., a customer of Evans, and Evans. The latter is a corporation of New Jersey and is not amenable to process here.

The suit against Sears, Roebuck and Co. was commenced in Dallas, Texas, on May 26, 1952 and was transferred to this court on motion of that defendant.

Thereafter, by stipulation and order both actions were consolidated for trial and Private Brand Rule Co., a subsidiary of Evans, and Material Process Co., a manufacturing affiliate, joined as parties defendant in the original suit and Evans appeared voluntarily.

Prior to these suits and before Evans appeared in the field, plaintiff had instituted infringement actions against E. Z. Red Rule Manufacturing Co., Master Rule Manufacturing Co., and The Stanley Works, all manufacturers of coated tapes, but settled each suit and granted non-exclusive licenses to those defendants under plaintiff's patents relating to white coated tape. None of these licensees had any relation to Evans' tapes. Before this plaintiff had entered into an agreement with Carlson & Sullivan, Inc., for the manufacture of coated tapes.

Defendants' contentions here are (1) that plaintiff persisted in prosecuting the first of these suits and brought the second, well knowing that its patents were invalid, and (2) that the suits were brought pursuant to an unlawful plan of action, jointly conceived and executed by plaintiff and its licensees to force Evans and its subsidiaries, Private Brand Rule Co. and Material Process Co., into line price-wise or out of business; that they connived, with their licensees Carlson & Sullivan and Master Rule Manufacturing Co., Inc. to accomplish this result.

In April 1950, Evans first shipped white coated tapes which were offered for sale at about half the prices charged by plaintiff, Carlson & Sullivan and Master. However, the trade was apparently aware prior to April 1950 of what Evans proposed to do, for plaintiff, Carlson & Sullivan and Master had already commenced exchanging thoughts on the enterprise. In substance, the exchange then and thereafter consisted mostly of the exhortations of Carlson & Sullivan and Master to do something about the new competition. Actually, it was the Evans prices that animated the parties rather than a new face in the trade. The remedies implicit in the suggestions of Carlson & Sullivan and Master were most drastic, comprising, it could very well be thought, price fixing, harassment, detraction and the like. I cannot find from the evidence, however, that plaintiff adopted these suggestions, except that it did eventually start these suits. I am satisfied that plaintiff made its own decision despite the fact that its actions coincided in part with the suggestion of the others.

Plaintiff's patents on which it sued were duly and regularly issued by the Patent Office and of course there was the presumption that they were valid. Defendants contend that before it started these actions plaintiff felt it had only a 50-50 chance of having its patents upheld. It seems to me that in this day and age and particularly in a patent case, a 50-50 chance of winning is not an undesirable risk and certainly should not deter a party from bringing an action to uphold a patent. The case took five days to try. Plaintiff was represented by very reputable and competent patent attorneys who presented plaintiff's claims well and vigorously. I was much impressed with plaintiff's product and of its great contribution to the tape trade. I so stated in my opinion:

"The plaintiff's tape was a successful attempt to overcome the infirmities of the prior art tapes. * * * Defendants concede their superiority over etched tapes in every respect and Mr. Goldman, vice-president of Evans, testified, in effect, that their visibility rendered them superior to an electro-plated tape, which his company does not make.

* * * * * *

"As indicated heretofore, there is no suggestion on the part of defendants that the coated tape is anything less than the superior product claimed by plaintiff. Evans makes it exclusively and is the largest producer in the world. * * *" 126 F. Supp. p. 860.

During and at the end of the trial I had no impression that plaintiff was attempting to validate a patent which it knew was invalid.

Plaintiff's licensees were urging it not to sue Evans but to sue distributors and dealers of Evans in various places in the United States, all of which would have the effect of injuring or destroying Evans' business. They were also urging the sending of notice to the trade to put buyers on guard against buying any more of Evans' products. Plaintiff sent out no general notice to the trade. The several letters it sent out to its dealers contained a caution about the use of the information. It did not bring a multiplicity of actions against the Evans distributors. It brought two actions, the first against Masback and Evans in this district, the second a suit in Texas against Sears, Roebuck.

**240**

Plaintiff was within its legal rights in bringing this suit against Masback (Evans' customer); it included Evans, who could not be served with process here but who appeared voluntarily.

Plaintiff could have sued Evans in New Jersey, where both plaintiff and Evans are located. I do not know why they did not do so. I believe it was on the advice of counsel. I cannot say that the bringing of this suit here was so reprehensible as to amount to bad faith, unless, of course, it was so done pursuant to the claimed conspiracy.

Plaintiff claims that when it sued Sears, Roebuck in Texas it did not know that Sears, Roebuck was a customer of Evans. As a matter of fact, it still claims that Private Brand Rule Co. (a wholly-owned subsidiary of Evans) was the seller of the tapes to Sears, Roebuck. Private Brand was incorporated on April 19, 1951, after the suit in this district was started.

Plaintiff claims that the necessity for the two suits was created by Evans "when it created these subsidiaries to insulate itself from liability in the New York case." Be that as it may, plaintiff had the legal right (jurisdiction being present) to sue Sears, Roebuck in Texas. The fact that the action was against a distributor and was brought in Texas alone would not justify me in holding that the suit was brought in bad faith; unless of course it was brought pursuant to a conspiracy to harass and injure Evans. I cannot say that this was so here. Sears, Roebuck, I believe, was one of the largest sellers of the Evans tapes. Plaintiff picked out no mean opponent. Certainly Sears, Roebuck could not be said to be a small and financially weak dealer unable to defend itself.

■ On the whole, I cannot say that these two suits were brought in accord with the conspiracy claimed by defendants. Neither can I say that the suits were brought by plaintiff well knowing that its patents were invalid.

Accordingly the application for counsel fees is denied.