**WILSON et al. v. SENG CO.**

No. 10450.

United States Court of Appeals
Seventh Circuit.

Feb. 1, 1952.

Heiskell Weatherford, Jr., Memphis, Tenn., Ira J. Wilson, Carl F. Geppert, Chicago, Ill., for appellants.

Bernard A. Schroeder, James C. Wood, Chicago, Ill., Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., of counsel, for appellee.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiffs' complaint sought relief based on (1) an equitable cause of action asking for an accounting for unjust enrichment because of alleged appropriation by defendant of an invention submitted to it by plaintiff before the patent in suit was issued, and (2) a patent infringement case alleging the infringement of U. S. Patent No. 2,-437,580 issued to plaintiff Wilson on March 9, 1948. The trial court found and concluded that there was no appropriation of plaintiff Wilson's invention by defendant, and that the claims of the patent in suit were invalid but if valid were not infringed,

and it awarded costs to defendant, including attorney fees of $13,283.35.

Plaintiff Wilson is the owner of the patent in suit, and plaintiff U. S. Bedding Company has an exclusive license to make, use and sell devices under the patent. The defendant has been manufacturing and selling sofa bed hinges for more than 60 years.

In one type of a sofa bed the back and seat members are hinged together, and are provided with special latches so that the seat may be raised until the back reaches horizontal position and the seat may then be unlatched and lowered so that the two members form a bed. The unit may be changed back to a sofa by raising the seat to latching position and then pushing the back and seat members to the original sofa position. A large number of sofa beds were sold between 1900 and 1914, but their popularity waned until the early 1930's when again there was a popular demand for sofa beds. The patent in suit relates to latches for sofa bed hinges, and plaintiffs claim infringement of Claims 7, 9, 10, 12, 16 and 17 of the patent in suit.

Prior hinge and latch structures in use by defendant and others utilized automatic unlatching dogs or pawls, but users of sofa beds so equipped were required to use care in moving the seat from bed position to intermediate position, to listen for a metallic click, and to immediately stop the upward movement, otherwise the latching effect would not be obtained.

In early 1944 plaintiff Wilson made up a latch with an over-balancing dog for a sofa bed hinge, and filed his application for a patent on April 14, 1944. He then submitted one of the hinges containing his latch and dog to the U. S. Bedding Company, and permitted them to make a set and put them on a sofa bed which was exhibited at the Furniture Show at Chicago in July, 1944. He himself also made a rough sample of the hinge, and during the period of the July, 1944, Furniture Show he had same delivered to the defendant's factory with a view of working out an arrangement for the defendant to make and sell such hinges.

Defendant showed an interest in Wilson's device, and on August 2, 1944, its president conferred with him to discuss a license agreement. Fox, the master mechanic of defendant, made up a pair of hinges like Wilson's. In July and August, 1944, defendant experimented with and tested the device which Wilson had left with it, and attempted to adapt the Wilson device to the hinge structures theretofore used by it. On August 4, 1944, defendant requested Wilson to send his patent drawings so that it could make an infringement search, but Wilson did not reply to this request nor answer a follow-up letter dated August 25, 1944.

In 1941 defendant had brought out its 810 hinge, using a latch with an over-balancing dog. The purpose of the over-balancing dog was to prevent the latch from unlocking accidentally in sofa position. An over-balancing dog is one which is weighted eccentrically to turn one way in one position and to turn the opposite way when moved to another position. Defendant discovered that the over-balancing dog, as then designed for use with a hinge, was not reliable since its turning action was at times hampered or prevented by lint, bedclothes or portions of the upholstery getting into its mechanism.

Early in 1944 the defendant had instructed Fox, to attempt to improve its sofa bed hinge and latch construction and to develop a "no-click" unlatching dog. Fox first developed a new shielded latch. While defendant waited for a reply to its communications sent to Wilson, Fox's attention turned back to the development of defendant's earlier type of one-direction dog which did not require an over-balancing movement, and which would fit into his newly developed shield. On September 5, 1944, defendant wrote to Wilson advising him that it had developed a dissimilar and satisfactory device of its own, and it thereupon withdrew offers previously made.

In August, 1944, Fox, together with George F. Hassel, defendant's chief draftsman, completed a hinge structure with a new type latch and tumbler and filed an application for a patent December 8, 1944. The device was put on the market in January, 1945, and has been sold commercially in large quantities since that date. Fox and

Hassel Patent No. 2,437,949 was issued March 16, 1948, and the accused device is made in accordance with the teachings of that patent. The Fox and Hassel application was co-pending in the same division of the Patent Office with that for the Wilson patent in suit for more than three years, but no interference was declared.

The Wilson device which was turned over to the defendant in 1944 was an unlatching dog for the hinge and latch structure of a shiftable sofa bed, which dog included in addition to an unlatching portion a hook-shaped portion. The upward movement of the seat from sofa position, and also from bed position, to intermediate position was stopped by the hook-shaped notch in the dog. Wilson arranged this dog on the latch of a hinge and latch structure so that in movement from unlatched position toward and prior to latching position, the interior of the hook-shaped portion and the latching pin came into engagement, and the dog was prevented by the engagement from moving into unlatching relation. Although Wilson's testimony on the point is somewhat vague and contradictory, the evidence discloses that the structure of the device submitted to defendant corresponded exactly with the Wilson patent drawings and descriptions. No hinges have been produced and sold commercially under the patent in suit.

In defendant's construction the back member, seat member, and latch move as a unit from sofa position until the back member reaches horizontal position. However, as the upward movement of the seat section continues alone, until stopped by the latch, the throw-out shoulder of the dog drops into operative position, so that a single downward movement of the seat releases the latch and permits the seat section to be lowered into bed position alongside of the back section. In returning from bed position, the seat is merely raised as high as it will go until stopped by the latch, and is then pressed downwardly, which causes the notch in the latch to engage the abutment and push the back up to sofa position. Instead of using a locking dog, defendant used a counter-balancing spring to hold the parts together during the shift to and from sofa position. One end of the spring was attached to the sofa frame, and the other end to one of the supporting arms of the hinge structure.

The trial court found the claims in suit to be invalid for lack of invention over the prior art, also invalid because defendant's device, which they are claimed to cover, were in public use and on sale more than one year before the first disclosure thereof to the Patent Office, and also invalid because they do not read upon or correspond with the disclosure and the teachings of the patent. The court also made a finding that the evidence did not show a confidential disclosure between Wilson and the defendant, and that in developing and constructing its new device defendant did not use anything submitted by Wilson.

We agree with appellant that an express agreement is not essential in order to create a confidential relationship. It may be implied from the conduct of the parties. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912. We also agree that a cause of action for wrongful appropriation of the feature of novelty of an invention does not necessarily fail where it is found that the accused device does not infringe the patent which was ultimately issued. Though infringement was not found in Booth v. Stutz Motor Car Co. of America, 7 Cir., 56 F.2d 962, and in Schreyer v. Casco Products Corp., 2 Cir., 190 F.2d 921, yet in each of these cases the cause of action for wrongful appropriation was sustained. However, in the case at bar, an examination of the record convinces us substantial evidence sutains the trial court's finding that in constructing its new device, defendant did not use anything submitted by Wilson; therefore the finding is not clearly erroneous and we may not disturb it on appeal.

After examining various prior art patents and considering expert testimony with reference thereto, the trial court found that the claims of the patent in suit were invalid for lack of invention over the prior art. In its findings the court pointed out that Seng Patent No. 658,125 issued in 1900 shows a commercially successful hinge having a dog pivotally mounted on a latch bar,

and weighted so as to be constantly urged in one direction, the dog having a throw-out shoulder and a hook-shaped slot to receive an abutment pin; also that Seng Patent No. 820,826 issued in 1906 shows a sofa bed hinge provided with a latch and a pivotally mounted dog having a throw-out shoulder and a hook-shaped end portion, and that Fig. 7 of this patent shows by dotted lines that the dog is weighted so that it can have an over-balancing movement. The court then referred to Crouch Patent No. 835,179, which shows a latch with a pivotally mounted dog, the dog having a hooked end portion; and to Karpen Patent No. 1,878,405, which shows a latch with a pivoted weighted dog; and to Krakauer Patent No. 2,224,825, which shows a latch with a pivotally mounted over-balancing dog, and mentioned that the Krakauer device is fully operative and it is unnecessary to listen for a click due to its automatic operation. The court also referred to Krakauer Patent No. 2,236,351, which has another type of hinge with a two-piece dog, which does not require extra movements to operate and it is unnecessary to listen for a click, and also to Jonassen Patent No. 2,295,083, which shows a hinge with a latch bar having a pivotally mounted dog provided with a hook in its end portion. The court concluded that in view of these patents, the claims in suit were invalid. "The same deference is due to the findings of the trial court which overturn claims as to those which sustain them." Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 336 U.S. 271, 279, 69 S.Ct. 535, 539, 93 L.Ed. 672. We cannot say that the findings of the trial court in this respect are clearly erroneous. Hazeltine Research, Inc., v. Admiral Corp., 7 Cir., 183 F.2d 953, 958. Therefore its conclusion of invalidity for lack of invention over the prior art must be sustained.

Wilson's patent application was filed April 14, 1944. Defendant's new hinge was put on the market in 1945. On May 29, 1947, Wilson filed an amendment to his application and made changes in the specifications. All the claims in suit were added subsequent to that date and are broader in scope than those originally filed. Defendant contends that the patent in suit is invalid because the claims were inserted more than two years after defendant's device was in public use, and the trial court so found. However, the court also found that defendant took nothing disclosed by Wilson, and that defendant's device did not infringe the claims of the patent in suit. We approve such findings, but think they are inconsistent with the finding of invalidity because of prior public use of defendant's device. In Cline Electric Mfg. Co. v. Kohler, 7 Cir., 27 F.2d 638, this court said, at page 641: "It is quite elementary that, to strike down a patent upon the ground that the patented article was in public use more than two years before the application was filed, this fact must be established by evidence so clear as to satisfy beyond reasonable doubt; and the evidence must so satisfy, not alone as to the time, but also that the use was of the very thing which was patented. (Citing)"

We disagree with each of the two additional grounds upon which the trial court found the claims of the patent in suit invalid. Claims 9, 10, 12, 16 and 17 of the patent in suit specify a sofa bed, including back and seat members. The trial court thought that as defendant sold only the hinge structure, there could be no direct infringement. We think the mention of the back and seat members in the claims was only descriptive of the setting and environment in which the hinges were to be used. In our view this would not invalidate the claims or rule out infringement.

The trial court also concluded that the claims of the patent in suit are invalid because they do not read upon the disclosure or teachings of the patent. This ground of invalidity is connected with the alleged public use of defendant's device more than two years before the disclosure to the Patent Office of the substance of plaintiff's claimed invention. In view of the fact we are sustaining the trial court's finding of invalidity for lack of invention over the prior art and also the finding of non-infringement, it is sufficient to say that in our opinion the claims of the patent in suit find adequate support in the disclosure of plain-

tiff's claimed invention prior to the date of the sale or public use of defendant's device.

We do approve, however, the finding of the trial court that if the Wilson claims are valid, they were not infringed by defendant's device. We think there is no identity of invention in the Wilson device and the accused device. Wilson's over-balancing dog is weighted eccentrically so as to be top heavy and swing one way or the opposite way, depending on the position of the latch. Defendant's dog is not over-balanced and is always urged in the same direction, regardless of the position of the latch. The Wilson patent says that one of the primary objects of the Wilson dog is to serve as a locking means in sofa position. Defendant's dog never locks the parts, and they are held together by a tension spring hereinbefore described. The Wilson dog serves as a stop to catch the pin when moving from sofa position, and also when moving from bed position, to take the entire strain of stopping, and this strain was found to bend the dog when it was tested by defendant. Defendant's dog never serves as a stop and is not put under a strain. Movement from sofa position and also from bed position in defendant's device is stopped by the latch and not by the dog. Only the outer side of defendant's guard is engaged by the pin and it need only be strong enough to lift the weight of the dog, which is first pushed out of the way vertically by a triangular detent and is then held there by the guard. In a similar movement the Wilson dog catches the pin to prevent re-engagement of the throw-out shoulder.

Wilson's dog only locks when it is over-balanced to the position shown in Fig. 1 of the patent. In this position the travel of the pin 37 is limited by the latched notch on one side, and the hook on the dog on the other side. The alignment of the latched notch and the hook opening make this locking action effective until the dog is over-balanced to the position shown in Fig. 2. After this over-balancing shift, it no longer locks the device but becomes a trip dog as stated in the file wrapper. It is true that defendant has a hook shaped guard, but its only function is to disengage the latch in moving from intermediate position to bed position. It is not essential to the successful operation of defendant's device that the guard be hook shaped. In defendant's device, when the parts are swung from sofa position to intermediate position, the dog, latch, seat and back members have no movement relative to each other, but swing as a unit until the back reaches bed position. There is no movement of the dog around its pivot during this movement as specified in the patent in suit.

We approve findings 19 to 24 inclusive, which discuss separately each of the claims in suit, and sustain the conclusion of the trial court that the claims of the patent in suit, if valid, were not infringed.

From September, 1948, through December, 1950, defendant's attorneys charged the defendant a total of $13,283.35 for services and disbursements. Statements were billed monthly, and paid by defendant. As part of the costs in this action, to be paid by plaintiff, the trial court allowed $13,283.35 as attorney fees. Defendant's counsel asked the court to include in the findings the following: "The evidence indicates that plaintiffs did not in fact proceed in good faith, and therefore defendant is entitled to attorney fees." The court refused to make such finding. None of the other findings show the precise basis for the award of attorney fees.

In Laufenberg, Inc., v. Goldblatt Bros., Inc., 7 Cir., 187 F.2d 823, 825, this court said: " * * * Although the award is discretionary, the trial court should make a specific finding to show the basis upon which the award of attorney's fees is made."

In Dubil v. Rayford Camp & Co., 9 Cir., 184 F.2d 899, 903, the court said: "As we have just said, the basis upon which attorney fees are to be awarded must be stated clearly. Otherwise it becomes the duty of the reviewing court to set the award aside. * * *"

We would be warranted, without more, in striking the award of attorneys

fees from the costs taxed herein. However, considering the question on the merits, and ignoring the fact that only part of this action arose under the patent laws, in this case the record does not reveal sufficient evidence to justify a finding of bad faith or oppressive or vexatious or other inequitable conduct by plaintiffs which could be the basis of an award of attorney fees.

In Laufenberg, Inc. v. Goldblatt Bros., Inc., supra, we summarized the basis for the allowance of attorney fees in patent cases, saying, 187 F.2d at page 825: "An award of attorney's fees under R.S. § 4921 is not the usual or customary procedure in a patent suit. Such an award is not a matter which follows as of course from the decision of the suit, as in the case of ordinary costs. This court has held that such fees are not to be allowed as a matter of course to the prevailing party in the usual patent suit. Blanc v. Spartan Tool Co., 7 Cir., 178 F.2d 104, 105. Other courts have said that such fees may be awarded to prevent gross injustice, Lincoln Electric Co. v. Linde Air Products Co., D.C., 74 F.Supp. 293, 294, and that the statute should be invoked only where vexatious or unjustified litigation is shown, Phillips Petroleum Co. v. Esso Standard Oil Co., D.C., 91 F.Supp. 215." The Phillips case was affirmed, 4 Cir., 185 F.2d 672.

The rule was similarly stated in the Ninth Circuit in Park-In Theatres, Inc., v. Perkins, 190 F.2d 137, 142: "* * * The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit be left to bear the burden of his own counsel fees which prevailing litigants normally bear. The cases support this view." ·

Among the cases cited by that court is Associated Plastics Co. v. Gits Molding Corp., 7 Cir., 182 F.2d 1000.

The portion of the judgment of the district court which makes an allowance for attorney fees must be set aside. The words, "including reasonable attorneys'" fees," (which were thereafter taxed at $13,283.35) are ordered stricken from Paragraph 4 of the judgment entered herein on January 25, 1951, and as thus modified, the judgment is affirmed.