## MERRILL v. BUILDERS ORNAMENTAL IRON CO.
### No. 4369.

United States Court of Appeals
Tenth Circuit.
May 12, 1952.
Rehearing Denied June 11, 1952.

---

3. Section 46 of Internal Revenue Code, 26 U.S.C.A. § 46; Secs. 29.46–1, 29.41–2, and 29.41–4 of Treasury Regulations 111.

P. H. Lamphere and Carle Whitehead, Denver, Colo. (Lamphere & Van Valkenburgh and Whitehead & Vogl, all of Denver, Colo., on the brief), for appellant.

Charles B. Cannon, Chicago, Ill. (George H. Wallace, Daniel V. O'Keeffe, Wallace & Cannon, all of Chicago, Ill., William Grant, and Grant, Shafroth & Toll, all of Denver, Colo., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

Builders Ornamental Iron Company instituted this action against Marcellus S. Merrill. It was alleged in the complaint that plaintiff was the manufacturer of frame straightening apparatus for use in straightening the frames of automotive vehicles; that defendant asserted ownership of Letters Patent No. 2,013,785, hereinafter referred to as patent 785, for frame straightening apparatus for automobiles,

and Letters Patent No. 2,042,856, hereinafter referred to as patent 856, for apparatus for straightening axles and truing the wheels of automobiles; that the patents and each and every claim thereof were invalid; that although the patents were invalid, defendant had charged plaintiff and its customers with infringement of them by reason of the manufacture, sale, and use of plaintiff's apparatus; that defendant had filed in the United States Court for Utah an action against certain named parties in which he charged infringement of the two patents by reason of the sale and use of the frame straightening device manufactured by plaintiff; that such action was then pending; that defendant had threatened and was threatening to file numerous like actions against customers of plaintiff for infringement of the patents; that the filing of such actions would subject plaintiff to great inconvenience and expense and would greatly damage its business; and that an actual controversy existed between plaintiff and defendant. The prayer was for a declaratory judgment adjudging and decreeing that the patents were invalid; adjudging and decreeing that the apparatus manufactured and sold by plaintiff did not infringe the patents or any of the claims thereof; enjoining defendant from filing or prosecuting anywhere in the United States further or additional actions against plaintiff or its customers based upon the validity of such patents and the infringement of them by the sale or use of the apparatus manufactured by plaintiff; enjoining defendant from prosecuting the action then pending in the United States Court for Utah; and taxing against defendant all costs, including reasonable attorney's fees. Defendant denied invalidity of the patents and pleaded that plaintiff was estopped to challenge their validity; and by counterclaim he charged that plaintiff had infringed and was infringing the patents. The prayer was that the complaint be dismissed; that plaintiff be enjoined from further infringement; that an accounting be had for profits and damages; and that the costs be taxed against plaintiff, including reasonable attorney's fees. Before the trial began, the charge of infringement contained in the counterclaim was narrowed to claims 1 and 2 of patent 785 and to claim 9 of patent 856. The court made extended findings of fact and conclusions of law. It found and concluded among other things that claims 1 and 2 of patent 785 were invalid because of public use and sale by defendant of a frame straightening apparatus or device embodying the construction disclosed by the patent and as defined in the two claims thereof more than two years prior to the filing of the application which matured into the patent; that if the two claims were valid, they were limited to a combination of elements which included certain members; that the apparatus manufactured by plaintiff did not infringe either of such claims; that claim 9 of patent 856 was invalid because of failure to particularly point out and distinctly claim the alleged invention purported to be covered thereby, and for attempting to cover a means or mechanism not disclosed therein; that plaintiff was not estopped to challenge the validity of the patents; that plaintiff was entitled to an injunction in substantial accordance with the prayer of the complaint; and that plaintiff was entitled to an award of reasonable attorney's fees. Judgment was entered accordingly, and defendant appealed. For convenience continued reference will be made to the parties as plaintiff and defendant, respectively.

■ Although amended by the Act of August 5, 1939, 53 Stat. 1212, to reduce the period to one year, under R.S. § 4886, 35 U.S.C.A. § 31, as it existed at the time of the filing of the application and at the time of the issuance of patent 785, a patent was invalid if there had been public use or sale of the device, apparatus, machine, or process more than two pears prior to the filing of the application for the patent. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071; Muncie Gear Works, Inc. v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171. But an inventor's use of his device or apparatus for experimental purposes is not public use within the intent and meaning of the statute. A use necessarily open to public view is not a public use in the sense of the stat-

ute, if it is made in good faith solely for the purpose of testing the qualities or operation of the invention. When the subject of the invention is a large machine, it may be tested and tried in a building, either with or without closed doors; and in either event, the use is not a public one within the meaning of the statute, so long as the machine is being used in good faith for experimental purposes. Whether use of an invention is public or private does not necessarily depend upon the number of persons to whom its use is known. The determinative factor is whether the use is made in good faith for purposes of experiment in testing the qualities and operation of the device or apparatus. City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 24 L.Ed. 1000; Egbert v. Lipmann, 104 U.S. 333, 26 L.Ed. 755; Smith & Griggs Manufacturing Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141; Electric Storage Battery Co. v. Shimadzu, supra. And use by an inventor in good faith for the purpose of testing his apparatus or device for experimental purposes is not public use within the scope of the statute, even though incidental to such use he derives some financial return. Good faith use of an invention for such purpose is not changed in character merely by the receipt of incidental profit or gain. Smith & Griggs Manufacturing Co. v. Sprague, supra; Aerovox Corp. v. Polymet Manufacturing Corp., 2 Cir., 67 F.2d 860.

In the ordinary action based upon infringement of a patent, public use or sale is an affirmative defense to be pleaded and proved. Electric Storage Battery Co. v. Shimadzu, supra. And it has long been settled law that when prior use or sale is relied upon to defeat the presumption arising from the grant of a patent, the evidence tending to establish such use or sale must be sufficiently clear, cogent, and satisfactory as to remove all reasonable doubt thereof. Coffin v. Ogden, 18 Wall. 120, 21 L.Ed. 821; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed 1017; The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154; Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed.

153; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Zachos v. Sherwin-Williams Co., 5 Cir., 177 F.2d 762. But when use is shown more than the statutory period antedating the filing of the application for the patent, it is incumbent upon the patentee to show that such use was experimental only. General Electric Co. v. Minneapolis-Honeywell Regulator Co., 2 Cir., 118 F.2d 278.

The application which matured into patent 785 was filed August 1, 1933. The court found that a frame straightening apparatus or machine embodying the construction disclosed in the patent and as defined in the two claims had been in public and commercial use by the defendant in his shop or garage in Denver Colorado, at least as early as the spring of the year 1931. The finding is challenged on the ground that the evidence was insufficient to meet the severe legal test having application in a case of this kind. The defendant owned and operated a shop in Denver. The building was approximately 120 feet in depth from front to back, and its entrance was on a public street. Sometime in the spring of 1931, a frame straightening device embodying substantially the construction and principles of the structure disclosed in the patent and as called for in the two claims presently in issue was assembled and used to some extent in the building. But it was a preliminary test model and it was located and kept in the extreme rear part of the shop until late in 1931 or early in 1932. It was not a practical model. Some parts were welded together and pulled loose; defects and deficiencies were encountered; changes were made; improvements were introduced; fixtures were added; and it was redesigned and rebuilt in substantial respects. Sometimes when a frame straightening job came to the shop and the customer was not in a hurry, defendant got his permission to try out the experimental model on the job in order to test it. And in some instances charges went through which included work done in that manner; but usually the charge was about one-third of the regular rate, and the model was used at a financial loss. While

the apparatus was located in the rear of the building and no effort was made to conceal it from the view of persons coming into the shop, and while in some instances charges made included work done with the use of the model, the use of the apparatus until sometime after August 1, 1931, was experimental in character for the primary purpose of testing the device in respect to its qualities and operation. It was collateral to the development of the invention in its complete and perfected form. And use of that nature is not public within the intent and meaning of R.S. § 4886, 35 U.S. C.A. § 31.

The court further found that an apparatus or machine embodying the construction disclosed in patent 785 and as defined in claims 1 and 2 thereof was sold by the defendant to Robert E. Romig, at Omaha, Nebraska, at least as early as the spring of 1931. There was no finding of public use in connection with the transaction between defendant and Romig or arising out of it. The finding was limited to a sale, and it is challenged on the ground of the insufficiency of the evidence to sustain it. The defendant and Romig were partners in the ownership and operation of a shop or garage in Omaha from about June, 1930, to sometime in 1933. In January or February, 1931, an apparatus or machine embodying the construction disclosed in the patent and as defined in claims 1 and 2 was assembled or partially assembled in Denver and shipped to Romig, at Omaha. But its shipment was a partnership transaction, not a sale from defendant to Romig; and there was no evidence showing that it was ever placed in public use at Omaha, or elsewhere. A check for $200 given by Romig to defendant in December, 1930, was introduced in evidence. But it failed to bear any notation indicating that it was in payment for the frame straightening apparatus or machine. And the uncontroverted testimony was that the check represented one of many transfers or withdrawals of money from the partnership business at Omaha; that it had no relation whatever to the apparatus or machine shipped to Romig; and that the apparatus or machine was not sold to Romig, or paid for otherwise. We are constrained to the view that the finding of a sale of an apparatus or machine embodying the construction disclosed in the patent more than two years prior to the filing of the application which matured into the patent is not sustained by the requisite substantial evidence.

■ Error is assigned upon the conclusion of the court that the apparatus manufactured by plaintiff and used in the straightening of automobile frames did not infringe claims 1 and 2 of patent 785. Infringement exists only when the accused apparatus or device and the disclosure of the patent in suit are substantially identical in mode of operation and results accomplished. An apparatus or device does not infringe unless it incorporates in its structure and operation the substance of the patent and produces substantially the same effect in substantially the same way as that taught in the patent. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136; Kokomo Fence Machine Co. v. Kitselman, 189 U.S. 8, 23 S.Ct. 521, 47 L.Ed. 689; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Stearns-Roger Manufacturing Co. v. Ruth, 10 Cir., 62 F.2d 442; Ratigan v. Deckard Supply Co., 10 Cir., 91 F.2d 722.

The patent and the drawings thereof disclose an apparatus or device comprising a frame which may be positioned over a pit in a floor. The frame includes a pair of rails arranged in parallel relationship at opposite sides of the pit in a garage or like place. The side rails are braced, and the braces are attached to the rails by a bracket arrangement. The frame is long enough and wide enough for an automobile to be mounted upon it in parallel relationship to the side rails for certain operations and to be mounted crosswise in other operations. It is stated in the preliminary explanation of the patent that the invention has for its object to provide a device consisting of parts so designed and combined that the bend or displacement of any nature of the frame of an automobile may be straightened or repositioned without removing the

frame from the automobile and without otherwise disassembling the automobile; and that a further object is to provide a unitary structure of general utility in the class of work therein mentioned. The specifications blueprint preferably three holding-pressure units in order to afford means for holding the frame in any desired position and against pressure from any desired direction, and for exerting pressure at any desired point and in any desired direction on the frame; each holding-pressure unit includes side beams supported upon and movable along rails by means of abutment brackets engaging and supporting the side beams in any suitable manner; the brackets are formed with a cross member provided with an extension, preferably beveled on the under side; the sides of the bracket have downward extensions carrying lugs extending beneath the upper flange of the rail, but normally out of contact with the rail; in certain operations the holding-pressure units will be forced to one side and the lug will engage the web of the rail; each holding-pressure unit includes an assembly mounted upon and between and movable longitudinally of the side beams, referred to as the slide unit or member; the slide unit comprises two parallel channel beams mounted between the side beams with their flat surfaces opposed and their upper and lower flanges extending outwardly and respectively above and below the side beams, the webs of the beams resting against and being slidable along and across the inner edges of the flanges of the beams; the beams carry and are spaced apart by abutment members positioned between the beams at each end of the beams; the side beams are provided with holes or other like means for holding a stop member such as a pin at any desired distance from the abutment bracket; the slide unit is movably supported upon the tops of the beams, preferably so supported that the top flanges of the beams will be normally but yieldingly supported above the tops of the beams and out of contact therewith, and such support is preferably a rolling support whereby the slide unit normally may be rolled along the tops of the beams, as desired, but such support is preferably yielding to permit the depression of the slide unit so that the flanges will rest upon the tops of the beams when weight is added to the slide unit or downward pressure is exerted thereon. The specifications state that for applying pressure to the parts of the frame of the automobile a member slidably mounted between the channel beams is provided; such member is referred to as the jaw member; it comprises a framework having a sliding fit between the inner opposed faces of channel beams, and having its upper portion enlarged into a crown, the edges of the base of which are adapted to rest and slide upon the tops of the channel beams; the framework is provided with a centrally located vertical runway in which is slidingly mounted the jaw provided with racks upon its front and rear edges; teeth of any desired shape for suitably engaging the parts of variously shaped frames of automobiles are provided for the jaw; for performing the desired operation the automobile is positioned above the apparatus with the frame at such distance above the apparatus that the teeth attached to the upper ends of the jaws will engage the desired portions of the frame; one of the holding-pressure units referred to as the central unit is moved upon the rails into a position beneath the apex of the bend in the frame; two of the jaw members are adjusted to such position in the slide members of the unit that the teeth of such jaw members will engage the apexes of the bends in the two side members of the automobile frame; the jaw members are secured in this position by wedges; jaw members are set in engagement with the side members of the automobile frame in such position as to hold such frame at their respective points of contact; and when the apparatus is thus adjusted a jack is operated to exert pressure against the abutment thus causing the slide unit of the central pressure unit to move to the left and causing the jaw members fixed in the slide unit to exert pressure upon the side members of the frame at the apexes of the bend therein and thus moving the side members of the frame to the left until the automobile frame is straightened. The

specifications further state that in order to straighten a racked frame, two of the holding-pressure units are positioned on the rails and spaced apart a distance substantially equal to the space between the side members of the automobile frame; the automobile is then positioned over the holding-pressure units with the side members of its frame above and parallel to the units, and at a suitable height thereabove for engagement of the frame by the teeth of the jaw members; the jaw member of one of the holding-pressure units is set to form an abutment for the end of one of the side members of the frame, the jaw member of the other unit is set against the opposite end of the other side member of the frame, a jack is inserted between the abutment bracket and the abutment, and the jack is operated until the side member of the frame against which it is exerting pressure is moved into proper alignment with the opposite side member of the frame. And the specifications further state that for use in straightening a sag in a member of an automobile frame, the automobile is positioned above the apparatus with the member above and at right angles to three holding-pressure units; the central holding-pressure unit is positioned beneath the point or apex of the sag; one of the jaw members with the jaw removed is positioned beneath the apex and the jack is seated upon the top of the crown of the jaw member, the upper end of the jack being in engagement with the apex of the sag; the other two holding-pressure members are positioned along the rails at suitable distance on either side of the sag; the teeth on the right and left jaw members engage the top member of the frame, pins are inserted through the crown and the jaws in order to hold the jaws against the upward pull when the jack is operated; the jaw members are held against the upward pull by wedges; and the jack is then operated and exerts upward pressure on the member at the point of the sag until it is forced upwardly to the straight position. Claim 1 reads:

"In apparatus for straightening frames of automobiles and the like, the combination comprising parallel side rails, a plurality of units movably supported upon and above said rails, means to limit movement of each unit transversely of the rails, abutments carried by said units, a member carried by and movable longitudinally of each of said units and including jaw elements, for engaging such automobile frame, and abutments, means for limiting the longitudinal movement of such member, a jack adapted to seat against a unit abutment and exert pressure upon a member abutment whereby to move said member and exert pressure on the said frame."

Claim 2 is identical with claim 1 except that the words "at a predetermined point and to hold other portions of said frame against such pressure" are added at the conclusion.

The invention in the patent consists of a unitary structure embodying several parts utilized to perform various automotive frame straightening operations which the apparatus or device is designed to perform. The basic purpose and function of the structure as disclosed in the patent is to straighten simultaneously a lateral bend in both side rails or frame side members of an automobile, to straighten a so-called diamond bend or racked frame of an automobile, and to straighten a vertical bend in an automobile frame. Holding-pressure units each of which includes a slide member and a jaw member with teeth to engage the frame of the automobile at desired positions are essential parts or elements of the unitary apparatus or structure. In operation, the holding-pressure units are moved along the side rails into position beneath the apexes of the lateral bends of the automobile frame; the slide members and jaw members are adjusted into such position that the teeth of the jaw members engage the side rails or side frame members of the automobile; the jaws are locked or secured in that position by the insertion of wedges; and by use of a jack pressure is applied to the apexes of the bend in the automobile frame. While the preferred form of structure in the illustrations accompanying the patent disclose the straightening simultaneously and in a single operation of a lateral bend in both side

rails or frame side members of an automobile, the patent does not expressly limit its operative function to the simultaneous straightening of such a bend in both side rails or frame side members; and evidence was adduced upon the trial tending to show that the apparatus may be used and operated to straighten only one rail. In any event, holding-pressure units which include slide members and jaw members with teeth thereon to engage the frame of the automobile at desired positions are essential elements or parts of the unitary apparatus, whether used to straighten a lateral bend or bends in the side rail or rails of an automobile, used to straighten a so-called diamond bend or racked frame of an automobile, or used to straighten a vertical bend in an automobile frame.

The frame straightening apparatus manufactured and sold by plaintiff comprises an elongated ramp-like structure, including a supporting frame which is adapted to be mounted at any suitable place. It has side rails extending lengthwise of the apparatus, cross rails extending transversely of the frame, and runways arranged at the sides of the apparatus. Its arrangement includes three cross beams with a riser bar carriage mounted on each cross beam, a riser bar extending upwardly from each carriage, and an extension arm or reach arm mounted on each riser bar and having an upwardly extending finger at the end thereof. In operation, two of the extension arms are spaced so that their upwardly extending fingers engage the side rail of the automobile frame at opposite ends of the lateral bend therein to act as resisters; the other and middle extension arm and finger engage the side rail at the apex of the lateral bend therein; and when pressure is applied thereto by means of a suitable jack, the midddle reach arm applies force in the direction of the resisters to correct the lateral bend in one side rail of the automobile frame. The apparatus does not have or embody a slide member including jaw elements or abutments, or any equivalent thereof; and it cannot be used for the simultaneous straightening of both side rails of an automobile. Unlike the unitary structure disclosed in claims 1 and 2 of the patent, the apparatus or structure manufactured by plaintiff is not a unitary structure which can be used to straighten at the same time and in a single operation a lateral bend in both side rails of an automobile, to straighten a so-called diamond bend or racked frame of an automobile, and to straighten a vertical bend in an automobile frame. It was not designed to perform and does not perform, at different times, such types of automobile frame straightening operations, in substantially the same manner as that taught in the patent. In view of the differences in means, operation, and results between the disclosures of the two claims in the patent and the apparatus or structure manufactured by plaintiff, there was no infringement.

■ Turning to the question of the validity of claim 9 of patent 856, it is stated in the preliminary introduction of the patent that the invention relates to apparatus for straightening axles and truing wheels of automobiles, and has for an object to provide a simple, economical, and efficient apparatus for such purpose; and that a further object is to provide an adjustable vise apparatus whereby an automobile axle may be gripped at any desired point or points and held rigidly at such point or points against the exertion of a bending pressure from any direction upon other point or points of the axle. The patent contains ten claims. Claims 1 to 8 inclusive each state in express language that the apparatus is for straightening axles of automobiles; and claim 10 states that it is for a structure of the character described, comprising a rigid framework having runways thereon for the reception of an automobile, frame elements extending horizontally transversely of the frame, of the character described, comprising a rigid framework and other parts or elements therein set forth. Claim 9 reads:

"In a mechanism for testing and altering the shape of automobiles, a rigidly constructed frame having runways for the reception of the wheels of an automobile, a rigid support on said frame to hold parts of the automobile against movement in a horizontal direction, another rigid support on said

frame serving as an abutment in the application of force to the automobile to alter the shape thereof, and power applying means cooperating with one of said rigid supports whereby power may be applied to a part of the automobile in altering the shape thereof."

Revised Statutes § 4888, 35 U.S.C.A. § 33, requires that the applicant for a patent "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." The claims of a patent are to be read and interpreted in the light of the specifications. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S. Ct. 698, 46 L.Ed. 968; American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 6, 51 S.Ct. 328, 75 L.Ed. 801; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132. But the statutory requirement of particularity and distinctness in claims is met only when the claims distinguish with reasonable certainty that which is claimed from that which may have gone before in the art and circumscribe with understandable clearness that which is foreclosed from future enterprise. The exaction of the statute in respect to particularity and distinctness in claims is not satisfied if a zone of uncertainty exists which enterprise and experimentation may enter only at the risk of infringement of the claims. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; United Carbon Co. v. Binney & Smith Co., 317 U. S. 228, 63 S.Ct. 165, 87 L.Ed. 232.

The claim presently under consideration states at the outset that it is for a mechanism for testing and altering the shape of automobiles. It states that the mechanism has a rigidly constructed frame with runways for the reception of the wheels of an automobile. It then states that the frame has thereon two rigid supports, one to hold parts of the automobile against movement in a horizontal direction and the other to serve as an abutment in the application of force to the automobile. And it further calls for power applying means cooperating with one of the rigid supports

whereby power may be applied to a part of the automobile in altering the shape thereof. The crucial parts or elements of the apparatus include rigid supports on the frame and power applying means cooperating with one of such supports. But the claim fails to describe the supports in respect to structural features, physical characteristics, position on the frame, or otherwise. And it does not undertake to describe in any manner the method in which the power means cooperates with the supports. The language of the claim describes these crucial elements or parts of the apparatus solely with respect to what they do rather than in terms of their physical characteristics or arrangements. And a claim of that kind fails to meet the exacting requirements of R.S. § 4888, supra. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.

■ A further contention advanced for reversal of the judgment is that the court erred in failing and refusing to hold that plaintiff was estopped to challenge the validity of the patents. The basis of the plea of estoppel was that an attorney representing plaintiff inquired of defendant in respect to the possibility of obtaining a license under the patents; that with full knowledge concerning the patents, negotiations extended over a long period of time; that at no time during the negotiations did plaintiff assert or even suggest the invalidity of the patents; that in order to open the way for defendant to grant a license to plaintiff, it was necessary for defendant either to obtain the consent of Kent Moore Organization, Inc., or for him to effect cancellation of a license previously granted to that company; that he employed attorneys and incurred expenses in an effort to work out the matter with Kent Moore; that as the result the license granted to that company was finally terminated; that thereafter plaintiff asserted for the first time the invalidity of the patents; and that having caused a material and substantial change in the position of defendant, plaintiff was precluded on general principles of equitable estoppel to challenge the

validity of the patents. Under the license granted to Kent Moore, defendant reserved the right to grant three other or additional non-exclusive licenses under the patents, one to Bear Manufacturing Company, one to John Bean Manufacturing Company, and one to an unnamed licensee of defendants' choice. A license was granted to Bear Manufacturing Company, one was granted to John Bean Manufacturing Company, and one was granted to James J. Redding. But the license granted to Redding terminated long prior to the first communication between the parties to this action, and no other license was granted in its place. Defendant was free to grant plaintiff a license under the patents, without first securing the consent of Kent Moore, or without first effectuating a termination of the license granted to that company. Consent of Kent Moore, or termination of the license to it was not an essential prerequisite to the right of defendant to grant plaintiff a license. The effort exerted and the expenses incurred in bringing about the termination of the license to Kent Moore were voluntarily exerted and incurred in order that defendant might grant a license to plaintiff and at the same time have and reserve unto himself the right to manufacture apparatus under the patents. It is manifest that under these circumstances plaintiff was not precluded on general principles of equitable estoppel to challenge the validity of the patents.

Complaint is directed at the part of the judgment relating to attorney's fees. The judgment provided that in addition to other recoverable costs, plaintiff be awarded its reasonable attorney's fees for all work done by its counsel in preparing for and conducting the trial of the action as to all of patent 785, and as to all work done by such counsel in preparing for the trial as to claims 2, 7, 8, and 10 of patent 856; and that jurisdiction of the cause be reserved for the purpose of determining the amount of such attorney's fees after the time for filing an appeal from the judgment had expired, in the event that no such appeal was taken, or, if such an appeal should be taken by the defendant,

after all appellate action had terminated and the mandate had been filed. The basis on which the court inserted that provision in the judgment was that the evidence disclosed public use and sale by defendant of an apparatus embodying the construction disclosed in claims 1 and 2 of patent 785 more than two years prior to the filing of the application which matured into the patent; that the delay of defendant until two days prior to the beginning of the trial of the cause to advise plaintiff that he would rely only on claims 1 and 2 of patent 785 and only on claim 9 of patent 856 was an unreasonable delay; and that such delay caused plaintiff to incur unnecessary expense in the preparation of the case for trial upon the issues relating to the claims which were waived. Under R.S. § 4921, as amended, 35 U.S.C.A. § 70, the court may in the exercise of its sound judicial discretion award reasonable attorney's fees to the prevailing party in a patent infringement case. But such fees are not to be allowed as a matter of course in the ordinary patent suit. And where conventional procedure is followed by the unsuccessful party litigant, attorney's fees are not to be awarded against him as a penalty for failing to prevail. Blanc v. Spartan Tool Co., 7 Cir., 178 F.2d 104, certiorari denied, 335 U.S. 853, 69 S.Ct. 81, 93 L.Ed. 401; Laufenberg, Inc. v. Goldblatt Bros., 7 Cir., 187 F.2d 823. The exercise of discretion in favor of the allowance of attorney's fees should have its source in unfairness or bad faith on the part of the losing party, or in some other equitable consideration such as vexatious or wholly unjustified litigation which makes it grossly unjust for the prevailing party in the particular case to bear the burden of his own counsel fees. Park-In-Theatres v. Perkins, 9 Cir., 190 F.2d 137; Wilson v. Seng Co., 7 Cir., 194 F.2d 399. Here, no bad faith on the part of defendant in obtaining the two patents was shown. It cannot be said that his institution of the action in Utah, his threat to institute other like actions, or his assertion of infringement in this case constituted bad faith or vexatious or wholly unjustified litigation. And there was no affirmative showing that the pro-

fessional services of the attorneys for plaintiff would have been any less in time or extent if the charge of infringement contained in the counterclaim had been sooner narrowed to claims 1 and 2 of patent 785 and claim 9 of patent 856. There were no such unusual circumstances in this case as to make it grossly unjust for plaintiff to bear the burden of its own counsel fees.

▮ Finally, we come to the question of costs on appeal. At the conclusion of the trial, the court announced its decision to the effect that the claims in issue in both patents were invalid and not infringed, and that the plea of estoppel was not well founded. Nothing was said in respect to attorney's fees. Thereafter, counsel for plaintiff prepared proposed findings of fact and conclusions of law and they became the findings and conclusions of the court. Without any previous suggestion from the court to that effect, the conclusions contained provisions for the allowance of attorney's fees. Defendant moved to amend the findings and conclusions in many respects, one being to eliminate therefrom the part relating to attorney's fees. In the course of a hearing on the motion, the court stated among other things that it signed the findings and conclusions with some doubt about the part relating to attorney's fees. At the hearing on the motion to amend, counsel for plaintiff urged that the award of attorney's fees was appropriate and proper and resisted its elimination. The allowance of attorney's fees was improvidently made, and counsel for plaintiff initiated and interjected it into the case. The action of the court in making the allowance was one ground of the appeal. And since the appeal was well taken insofar as that ground was concerned, the costs on appeal should be divided equally between the parties.

The judgment, insofar as it determined that claims 1 and 2 of Patent No. 2,013,785 were invalid, is reversed; the judgment is modified by striking therefrom the part relating to the award of attorney's fees; the judgment in other respects is affirmed; and the costs on appeal are divided equally between the parties.